## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

William V. Tran,

      Plaintiff,

    v.

Xavier Becerra, Secretary
U.S. Department of
Health and Human Services

      Defendant.

\*

\*

Civil Action No. 8:23-cv-00495-PX

\*

\*

\*

\*

\*\*\*

### <u>MEMORANDUM OPINION</u>

Pending in this employment discrimination matter is Defendant Xavier Becerra, Secretary of the U.S. Department of Health and Human Services' motion to dismiss or alternatively for summary judgment.  ECF No. 35.  The issues are fully briefed, and no hearing is necessary.  *See* Loc. R. 105.6.  For the reasons stated below, the motion is granted, and the claims are dismissed with prejudice.

### I.    Background[1]

Plaintiff William Tran, who is over the age of 40, works at the National Institutes of Health ("NIH") as a mechanical engineer.  ECF No. 28 ¶¶ 13–15.  During his many years of employment with the federal government, he has received exceptional performance reviews.  *Id*. ¶ 19.  Tran holds a Bachelor of Science in mechanical engineering and is a licensed and qualified HVAC contractor.  *Id.*  For much of his time with NIH, Tran worked at the Central Utility Plant ("CUP").

---

[1] The Court construes the Complaint facts as true and most favorably to Tran as the nonmovant.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Beginning in February 2015, one of Tran's supervisors directed him to perform the duties of less qualified individuals, such as "organizing the inventory cage."  ECF No. 28 ¶ 26.  In April 2015, Tran was tasked with supervising another employee, even though supervisory duties were not ordinarily part of Tran's job.  The supervisee was "difficult," and as a result, Tran sent many emails to his bosses objecting to the assignment.  *Id.* ¶¶ 22–28.

Later that year, Tran learned that he was not promoted to Maintenance Supervisor even though he had "expressed interest" in the job.  He maintains that the person selected for the position was "less qualified" than he.  ECF No. 28 ¶ 29.  Thereafter, Tran sent five emails to his supervisors in which he "plead[ed] for other career opportunities."  *Id.* ¶ 37.  Management never responded.  *Id.* ¶ 38.  Tran took their silence to mean that his supervisors were "orchestrating hiring opportunities for less qualified individuals."  *Id.*

Next in April of 2016, Tran was evidently "not considered" for two more positions – the "Acting Chief" and "Maximo Administrator."  ECF No. 28 ¶¶ 41–44.  As for the Acting Chief position, it appears as if the stated reason for his non-selection pertained to Tran's "GS" level.[2] *Id.* ¶ 41.  As to the Maximo Administrator position, even though Tran had been previously involved in Maximo meetings, the job went to someone else.  Tran learned that the selectee had a criminal record which Tran found "suspicious."  *Id.* ¶¶ 43–44.  Also, throughout Tran's employment at the CUP, supervisors denied him telework and training opportunities that were offered to other younger and less qualified engineers.  *Id.* ¶¶ 39–40.

At some point, Tran supposedly got into a heated argument with co-workers in which he complained about the incompetence of his supervisors, noting that "taxpayer money was being

---

[2] *See* U.S. Office of Pers. Mgmt., 2016 General Schedule (GS) Pay Tables https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2016/general-schedule/.  The Court takes judicial notice of the GS pay system for federal employees. *See* Fed. R. Evid. 201.

wasted" on their salaries.  ECF No. 28 ¶ 45.  Next, on May 3, 2016, Tran was relieved of certain duties at the CUP.  When he protested the change, Tran was told that if he did not like it, he could look for another job.  *Id.* ¶ 46.

On June 3, 2016, Tran contacted his Equal Employment Opportunity ("EEO") counselor and thereafter filed a formal EEO charge, alleging age-based discrimination, harassment and retaliation.  ECF No. 28 ¶ 7.  *See also* ECF No. 25-3 at 3.  Also in early June, Tran learned that he had not received cash and leave bonuses where other colleagues with lower annual performance ratings did.  *Id.* ¶ 49.

Tran next filed an "incident report" with the NIH Police Department, but the NIH detective assigned to the matter would not "get involved" because the complaint was somehow related to his EEOC charge.  ECF No. 28 ¶ 50.  Tran pleaded for the detective to investigate.  *Id*. Ultimately the EEO received an "unsigned" incident report, which again appeared "suspicious" to Tran, given that he had also requested a police report from the NIH police.  *Id.*

While his EEO charge was under investigation, Tran again was not selected for the position of Supervisory Engineer.  ECF No. 28 ¶ 51.  The stated reason for the non-selection was that Tran lacked an "FAC-PPM certification."  *Id.*  Tran takes umbrage at this reason because he has other degrees and certificates and the selectee's primary area of expertise concerns bridges and roads.  *Id.*  He also appears not have been selected for a Branch Chief position and believes one of the interview panelists for that job gave him lower scores on account of his EEO activity. *Id.* ¶ 52.

After administratively exhausting his EEO claims, Tran filed this lawsuit on September 18, 2021, in the United States District Court for the District of Columbia.  ECF No. 1.  Tran originally alleged that he had been the victim of national origin discrimination (Count I), race

discrimination (Count II), and retaliation (Count III), all under 42 U.S.C. § 2000(e), *et seq.*

("Title VII"). Tran also brought one count of national origin discrimination pursuant to Section

1981(a) of the Civil Rights Act of 1866 (Count IV). *Id.* The Government moved to dismiss the

Complaint on venue and sufficiency grounds. ECF No. 11. The District Court granted the

motion solely as to lack of venue and transferred the matter to this Court. ECF No. 16.

Thereafter, the Government renewed its motion to dismiss for failure to state a claim.

ECF No. 25. In response, Tran amended his Complaint. ECF No. 28. In the Amended

Complaint, Tran makes the same factual averments as in the original Complaint, but abandons

the race and national origin claims; instead, he pursues one count of discrimination under the

Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA") (Count I);

and two counts of retaliation under the ADEA and Title VII respectively (Counts II & III). ECF

No. 28. The Government now moves to dismiss the Amended Complaint entirely or for

summary judgment to be granted in its favor. ECF No. 35.

## II.     Standard of Review

When a motion to dismiss is styled in the alternative as a motion for summary judgment,

the Court may exercise its discretion under Federal Rule of Civil Procedure Rule 12(d) to treat

the motion under either standard. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir.

2007); *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436 (D.

Md. 2011), *aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684

F.3d 462 (4th Cir. 2012). If the nonmovant opposes converting the motion to one for summary

judgment and formal discovery has not taken place, the nonmovant must provide "by affidavit or

declaration that, for specified reasons, it cannot present facts essential to justify its opposition."

Fed. R. Civ. P. 56(d). Where the nonmovant fails to file such a declaration, he "cannot complain

that summary judgment was granted without discovery." *Id.* (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)); *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) ("[T]he failure to file an affidavit under [Rule 56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.") (citation omitted).

Although Tran opposes treating the motion as one for summary judgment, he has failed to submit a Rule 56(d) declaration. Nor does he provide any grounds for why summary judgment would not be proper based on the robust EEO administrative record. *See* ECF No. 25-1 through ECF No. 25-10. Nonetheless, out of an abundance of caution, the Court confines its analysis to the sufficiency of the Amended Complaint.

When reviewing a complaint for sufficiency under Rule 12(b)(6), the Court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). However, the Court need not "credit a complaint's conclusory statements without reference to its factual context," *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009), or "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Iqbal*, 556 U.S. at 663 (". . . the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must be able to deduce "more than the mere possibility of misconduct" and the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016).

### III.    Analysis

### A.  Age Discrimination (Count I)

Tran advances two liability theories to support his age-discrimination claim: first, that because of his age, NIH refused to promote him; and second, that NIH denied him bonuses and other benefits.  *See generally* ECF No. 28.  The Government contends that the claims must be dismissed because the complaint allegations are too vague and nonspecific to survive challenge. ECF No. 35 at 9-10.  The Court agrees with the Government.

The ADEA prohibits age-based discrimination in the workplace.  29 U.S.C. § 623(a). Where, as here, the employee does not allege that he was the victim of direct discrimination, the Court applies the well-known burden shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006).  Under *McDonnell Douglas*, the employee must first make a prima facie showing of discrimination.  *Id.*  For a failure-to-promote claim, the plaintiff makes that showing if he (1) was over 40 years old; (2) was qualified for the position he sought; (3) was rejected despite his qualifications; and (4) the position remained open or was filled by a similarly qualified and younger applicant.  *Id*.  For a denial-of-benefits claim, the plaintiff similarly must show that he was qualified to receive the benefit but nonetheless denied the same on account of his age.  *See E.E.O.C. v. Balt. Cty.*, 747 F.3d 267, 272-73 (4th Cir. 2014).

Once the plaintiff makes this prima facie showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse decision.  *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000); *McDonnell Douglas,* 411 U.S. at 802–03.  If the defendant makes that showing, the burden shifts back to the plaintiff to show that

6

his age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009).

Although at the pleading stage, the plaintiff's prima facie showing is "not onerous," *Westmoreland v. TWC Admin.* LLC, 924 F.3d 718, 725 (4th Cir. 2019), the allegations must include some facts to give rise to an inference of discrimination. The Amended Complaint regrettably includes none.

As to the failure-to-promote claim, the Amended Complaint includes no facts from which the Court can infer that Tran was qualified for any positions for which he was not selected. The pleading offers no detail about job requirements or responsibilities; or how Tran possessed the skills, education, or experience to compete for the jobs. Although the Amended Complaint does aver for the Maximo Administrator that Tran had experience in the area and was included in meetings, nothing makes plausible that this made Tran a competitive applicant for the position. Nor are there any facts to make plausible that those who were selected had been younger and less qualified than Tran. Mere reference to a selectee's criminal record, or generalized averments of youth, do not suffice. Because no detail makes plausible the prima facie case, the claims must be dismissed.

As for the denial of benefits – namely telework and bonuses – the Amended Complaint facts are simply too thin to nudge the claim from possible to plausible. Sure, the Amended Complaint avers that "other employees" were permitted to telework and received bonuses and that Tran was given none of these perks. ECF No. 28 ¶ 39, 49. But no facts give rise to the inference that those who received the benefits were younger than Tran, or that Tran was qualified to receive that which he had been denied. Similarly, as to the alleged denial of training opportunities, Tran simply states that he had been denied training that others received for quite

some time and that younger people were trained. *Id.* ¶ 40. But without any facts to make plausible that Tran was entitled to receive the training and was denied training because of his age, the claim does not survive challenge. Count I, therefore, will be dismissed.

**B. Retaliation Under ADEA and Title VII (Counts II and III)**

Both Title VII and the ADEA prohibit an employer from retaliating against an employee because he "has opposed any practice made an unlawful employment practice by [the respective statute], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the respective statute]." 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). To survive dismissal, a complaint must aver some facts to make plausible that: (1) the plaintiff engaged in protected activity; (2) the employer took an adverse action against him; and (3) a causal link exists between the two. *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001); *Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 487 (D. Md. 2016); *Stoyanov v. Winter*, RDB 05-1611, 2006 WL 5838450, at *11 (D. Md. 2006). Causation may be inferred when the adverse action follows close in time to the protected activity. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (D. Md. 2021). Moreover, employer actions are sufficiently "adverse" if they would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (internal quotation marks omitted).

Tran alleges that he filed his EEO Charge on June 3, 2016, and appears to confine the retaliation claims to the events following the charge. ECF No. 28 ¶¶ 7, 93. Accordingly, the Court focuses on whether any facts make plausible that the claimed retaliatory acts were the result of Tran's EEO activity. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145

F.3d 653, 657 (4th Cir. 1998) (an employer cannot be liable for retaliation based on conduct predating the protected activity).

As best the Court can discern, only two potential retaliatory acts followed the EEO charge: the denial of cash or time-off bonuses, and Tran's non-selection for a supervisory position.  ECF No. 28 ¶¶ 49, 51.  Regarding his denial of time off and bonuses, the Amended Complaint offers few details about who denied Tran these benefits, let alone that those same decisionmakers knew of Tran's prior EEO activity.  *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) ("[A] plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected activity."); *see also Price v. Thompson,* 380 F.3d 209, 213 (4th Cir. 2004) *abrogated on other grounds by Cole v. Family Dollar Stores of Md., Inc.*, 811 Fed. Appx. 168 (4th Cir. 2020) ("the employer's knowledge coupled with an adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case.").  The Amended Complaint merely alleges that three days after Tran filed the EEO charge, "he learned" that he had been denied a bonus and time off that he believe he rightfully earned.  ECF No. 28 at ¶ 49.

Regarding the second post-EEO event, Tran's non selection for a supervisory position, the Amended Complaint avers that one member of the interview panel for the position was also "part of" his EEO case, and that Tran "felt" that he received "lower interview scores" in retaliation for his EEO activity.  *Id.* ¶ 52.  But once again, no facts make plausible that the panelist knew of Tran's EEO activity prior to the interviews.  The Amended Complaint does not even aver the *identity* of the panelist who supposedly had some role in the EEO matter;[3] nor does

---

[3] By process of elimination, the Court suspects that Mr. Guan was the "panelist" to whom Tran refers because Guan appears to have supervised Tran in the past and had denied Tran telework.  ECF No. 28 ¶¶ 37, 39, 52.  But no facts make plausible that Guan knew about Tran's protected activity at the time Tran applied for the supervisory position.

it offer any detail as to how or when the panelist learned of Tran's EEO activity in relation to the job interview.  *Id.*  Without even basic temporal facts making plausible the panelist's knowledge of the EEO activity before the interviews, the Court cannot infer that Tran's protected conduct had anything to do with his low interview scores.  Because the Amended Complaint fails to make plausible any acts of retaliation, Counts II and III must be dismissed.

## IV.    Dismissal With or Without Prejudice

Predictably, NIH urges the Court to dismiss the claims with prejudice while Tran wishes for yet another opportunity to amend.  ECF Nos. 35 and 36.  Generally, when a plaintiff has not been afforded an opportunity to amend the complaint, dismissal should be without prejudice. *See Glover v. Loan Science, LLC*, No. 8:19-01880-PWG, 2020 WL 3960623, at *3 (D. Md. July 13, 2020) (citing *Adams v. Sw. Va. Reg'l Jail Auth*., 524 F. App'x 899, 900 (4th Cir. 2013)).  But Tran has already amended the Complaint in response to the Government's two prior motions to dismiss.  Those motions focused on many of the same pleading deficiencies that plague the Amended Complaint.  *Compare* ECF Nos. 11, 25, and 35.  *See Watkins v. Washington Post*, PWG-17-818, 2018 WL 805394, at *8 (D. Md. 2018) (failure to state a claim in an amended complaint "after having been advised with specificity of the legal deficiencies" in the initial complaint warrants dismissal with prejudice).  Nonetheless, Tran has yet to cure these deficiencies even though he has at his disposal a robust administrative record that includes several witness interviews, written exchange of discovery, a final administrative decision, and an appeal of that decision.  ECF Nos. 25-1 through 25-10.  Because Tran provides no reason to believe that allowing yet another opportunity to amend would make a difference, the Court denies his request, and dismisses the Amended Complaint with prejudice.

**V.      Conclusion**

Based on the foregoing, NIH's motion to dismiss is GRANTED.  The Amended

Complaint is dismissed with prejudice.  A separate Order follows.


September 19, 2024                          /S/
_____          _____
Date                                       Paula Xinis
                                           United States District Judge